Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| MABEL DEL CARMEN COLÓN BERRIOS Y OTROS<br><br>Recurrida<br><br>v.<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO Y OTROS<br><br>Peticionaria | TA2026CE00367 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Caso Núm.: PO2022CV03346<br><br>Sobre: Daños y Perjuicios por Impericia Médica |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 13 de abril de 2026.

Comparece el Estado Libre Asociado de Puerto Rico (en adelante ELA o parte peticionaria) mediante un recurso de *certiorari,* para solicitarnos la revisión de una *Resolución* emitida el 5 de febrero de 2026, notificada al día siguiente, por el Tribunal de Primera Instancia, Sala Superior de Ponce.[1] Mediante la *Resolución* recurrida, el foro primario declaró *No Ha Lugar* una moción de desestimación presentada por el ELA.

Por los fundamentos que expondremos, se *deniega* la expedición del auto de *Certiorari.*

I

Esta es la segunda ocasión en la que se presenta ante este Tribunal de Apelaciones un recurso sobre el caso de epígrafe. En la primera ocasión, un panel hermano confirmó lo dictaminado por el foro *a quo* en una *Resolución* notificada el 20 de octubre de 2023.[2]

---

[1] Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI), a la Entrada Núm. 89.
[2] Véase *Sentencia* del alfanumérico KLCE202301361.

Mediante esta *Resolución,* el referido foro declaró *No Ha Lugar* un *Aviso de Injunction Paralizando la Litigación del Presente Caso.*[3] En consideración a lo anterior, nos limitaremos a esbozar los trámites procesales pertinentes a la presente controversia.

Dicho lo anterior, precisa señalar que el caso de marras inició, el 5 de diciembre de 2022, cuando Mabel Del Carmen Colón Berríos (en adelante, señora Colón Berríos) y Alejandra M. Eusebio Vázquez (en adelante, señora Eusebio Vázquez), por sí y en representación de su hija menor de edad, A.E.T.E., (en adelante, parte recurrida) presentaron una *Demanda* sobre daños y perjuicios en contra del ELA; el Departamento de Corrección y Rehabilitación (DCR); Physician H.M.O., Inc. h/n/c Physician Correctional (en adelante, Physician Correctional), así como otras partes desconocidas.[4] En suma, alegó que las intervenciones de los médicos de emergencia del complejo carcelario de Las Cucharas en Ponce con el señor Edgardo Torres Colón (en adelante, señor Torres Colón), familiar de la parte recurrida, fueron negligentes e inadecuadas, constituyendo así el nexo causal de las demoras en identificar las condiciones reales que tuvo el confinado y lo condujeron a su muerte. A tenor, alegó que los demandados eran responsables mancomunada y solidariamente por los daños causados tanto al señor Torres Colón como ellas, los cuales estimaron en unos $950,000.00 dólares.

En respuesta, el 10 de febrero de 2023, Physician Correctional presentó su *Contestación a demanda.*[5] Mediante la misma, negó algunas de las alegaciones y admitió otras. Particularmente, admitió que brindó tratamiento médico al señor Torres Colón.

Tras varias instancias procesales innecesarias pormenorizar, el 12 de septiembre de 2024, el ELA presentó una primera *Moción*

---

[3] SUMAC TPI, a la Entrada Núm. 20. En desacuerdo, el ELA presentó un recurso ante el Tribunal Supremo, el cual fue declarado *No Ha Lugar* mediante *Resolución* del 7 junio de 2024. Véase *Resolución* del alfanumérico CC-2024-0294.
[4] SUMAC TPI, a la Entrada Núm. 1.
[5] *Íd.,* a la Entrada Núm. 9.

*de desestimación por prescripción*,[6] en la cual alegó que las partes incumplieron con el requisito de notificación al Estado requerido por la Ley de Reclamaciones y Demandas contra el Estado.[7] Tras celebrarse una vista evidenciaria,[8] el foro primario declaró *No Ha Lugar* la moción de desestimación, en cuanto a la señora Colón Berríos y la menor A.E.T.E.[9] En cambio, la declaró parcialmente *Ha Lugar*, con relación a la señora Eusebio Vázquez, por sí, desestimando la demanda en lo referente a esta parte.[10] En desacuerdo, el ELA presentó una *Moción de reconsideración*,[11] la cual fue declarada *No Ha Lugar*.[12]

Pasado un tiempo, el 18 de noviembre de 2025, el ELA, por sí y en representación del DCR, presentó su *Contestación a la demanda*. Mediante este escrito negó algunas alegaciones y aceptó otras.[13] Entre sus defensas afirmativas, razonó que no existía una relación causal entre los actos alegadamente realizados por el ELA, sus funcionarios, agentes o empleados y los daños presumiblemente sufridos por la parte recurrida. Esto, puesto a que la compañía Physician Correctional asumió la administración total del sistema de salud correccional.

Días más tarde, el 20 de noviembre de 2025, el tribunal *a quo* emitió y notificó una *Orden* para que las partes del título se dispusieran a preparar el informe para el manejo del caso.[14]

Así las cosas, el 30 de diciembre de 2025, el ELA presentó una segunda *Moción en solicitud de desestimación*. En esta, expuso que el área médica en la institución correccional en la cual se encontraba el señor Torres era administrada en su totalidad por Physician

---

[6] SUMAC TPI, a la Entrada Núm. 39.
[7] Ley Núm. 104 de 29 de junio de 1955, 32 LPRA sec. 3077 nota *et seq.*
[8] SUMAC TPI, a la Entrada Núm. 74.
[9] *Íd.*, a la Entrada Núm. 75.
[10] *Íd.*
[11] *Íd.*, a la Entrada Núm. 76.
[12] *Íd.*, a la Entrada Núm. 77.
[13] *Íd.*, a la Entrada Núm. 82.
[14] *Íd.*, a la Entrada Núm. 83.

Correctional, una organización privada e independiente del DCR. Por lo anterior, arguyó que la *Demanda* no justificaba la concesión de un remedio por parte del ELA, toda vez que las alegaciones vertidas en la misma no iban dirigidas a su persona.[15] A tenor, peticionó que la *Demanda* fuera desestimada a favor del ELA. Mediante *Orden* del 8 de enero de 2026, el tribunal concedió veinte (20) días a la parte recurrida para fijar posición.[16]

Subsiguiente, el 29 de enero de 2026, el ELA incoó una *Moción solicitando remedio*, mediante la cual solicitó que se diera por sometida su moción de desestimación sin oposición, en vista de que el término concedido a la parte recurrida para fijar posición había concluido.[17]

No obstante, lo anterior, el 5 de febrero de 2026, la parte recurrida presentó su posición mediante un escrito intitulado *Segunda oposición a una desestimación*.[18] En este, arguyó que el DCR era la agencia gubernamental encargada de velar por el bienestar de las personas que se encuentran privadas de libertad mientras cumplen una pena. Asimismo, planteó que mientras el señor Torres Colón recibió los tratamientos que causaron su muerte, este estaba en custodia del DCR. A tenor, acotó que no era necesario que el DCR hubiese realizado los procedimientos médicos para responder de ellos. Lo anterior, dado a que la agencia debía responder de manera vicaria por la conducta incurrida por la corporación privada que contrató para encargarse del cuidado médico de la población penal.

Examinados los antedichos escritos, el 5 de febrero de 2026, el foro primario emitió la *Resolución* que nos ocupa, notificándose al día siguiente.[19] Mediante el referido dictamen, declaró *No Ha Lugar*

---

[15] SUMAC TPI, a la Entrada Núm. 84.
[16] *Íd.*, a la Entrada Núm. 85.
[17] *Íd.*, a la Entrada Núm. 86.
[18] *Íd.*, a la Entrada Núm. 87.
[19] *Íd.*, a la Entrada Núm. 89.

la solicitud de desestimación presentada por el ELA. Específicamente, destacó que no se había demostrado, de forma certera, que la parte recurrida no tenía derecho a remedio alguno.

Inconforme, el 20 de febrero de 2026, el ELA presentó una *Solicitud de reconsideración*,[20] la cual fue declarada sin lugar.[21]

Aun en desacuerdo con el curso decisorio, el 25 de marzo de 2026, el ELA, por conducto de la Oficina del Procurador General, presentó una *Petición de Certiorari*, en la cual esgrimió el siguiente señalamiento de error:

> Erró el Tribunal de Primera Instancia al denegar la desestimación de la demanda contra el Estado, a pesar de que deja de exponer una reclamación plausible que justifique la concesión de remedio a la parte demandante, ante la ausencia total de alegaciones de hechos que demuestren que empleados o funcionarios del DCR incurrieron en actuaciones u omisiones culposas o negligentes que constituyeran la causa adecuada de los alegados daños sufridos.

Mediante *Resolución* emitida el 26 de marzo de 2026, concedimos a la parte recurrida hasta el 6 de abril de 2026, para expresarse en torno al recurso. Superado el término concedido a la parte recurrida para comparecer sin haberlo hecho, procederemos a disponer del recurso sin el beneficio de su comparecencia.

II

**A. Expedición del Recurso de *Certiorari***

Los recursos de *Certiorari* presentados ante el Tribunal de Apelaciones deben ser examinados en principio bajo la Regla 52.1 de las Reglas de Procedimiento Civil.[22] Esta Regla limita la autoridad y el alcance de la facultad revisora de este Tribunal mediante el recurso de *Certiorari* sobre órdenes y resoluciones dictadas por los Tribunales de Primera Instancia. La Regla lee como sigue:

> El recurso de Certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter

---

[20] SUMAC TPI, a la Entrada Núm. 91.
[21] *Íd.*, a la Entrada Núm. 92.
[22] 32 LPRA Ap. V, R. 52.1.

dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de Certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.[23]

[. . .].[24]

Por su parte, la Regla 52.2 (b) dispone sobre los términos y efectos de la presentación de un recurso de *Certiorari* que:

Los recursos de *certiorari* al Tribunal de Apelaciones para revisar resoluciones u órdenes del Tribunal de Primera Instancia o al Tribunal Supremo para revisar las demás sentencias o resoluciones finales del Tribunal de Apelaciones en recursos discrecionales o para revisar cualquier resolución interlocutoria del Tribunal de Apelaciones deberán presentarse dentro del término de treinta (30) días contados desde la fecha de notificación de la resolución u orden recurrida. El término aquí dispuesto es de cumplimiento estricto, prorrogable sólo cuando medien circunstancias especiales debidamente sustentadas en la solicitud de *certiorari*.

[. . .].[25]

Establecido lo anterior, precisa señalar que el recurso de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior.[26] A diferencia del recurso de apelación, el auto de *certiorari* es de carácter discrecional.[27] La discreción ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[28] A esos efectos, se ha considerado que "la discreción se nutre de un juicio racional apoyado en la razonabilidad y en un sentido llano de justicia y no es función al antojo o voluntad de uno, sin tasa ni limitación alguna".[29]

---

[23] 32 LPRA Ap. V, R. 52.1.
[24] *Íd.*
[25] *Íd.*
[26] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023)*; 800 Ponce de León v. AIG,* 205 DPR 163, 174 (2020).
[27] *Rivera Figueroa v. Joes's European Shop,* 183 DPR 580, 596 (2011).
[28] *Mun. de Caguas v. JRO Construction, Inc.* 201 DPR 703, 712 (2019); *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013).
[29] *SLG Zapata-Rivera v. J.F. Montalvo,* supra, 435.

Por otra parte, la Regla 40 del Reglamento del Tribunal de Apelaciones esgrime que el Tribunal deberá considerar los siguientes criterios para expedir un auto de *Certiorari:*

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición el auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. [30]

Por otra parte, el Tribunal Supremo de Puerto ha establecido que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto.[31] Quiérase decir, no hemos de interferir con los Tribunales de Primera Instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último: (i) actuó con prejuicio o parcialidad, (ii) incurrió en un craso abuso de discreción,  o (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[32]

Finalmente, advertimos que la denegatoria a expedir un recurso discrecional no implica la ausencia de error en el dictamen cuya revisión se solicitó, como tampoco constituye una adjudicación en sus méritos. Meramente, responde a la facultad discrecional del

---

[30] Regla 40 del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 59-60, 215 DPR __ (2025).
[31] *Coop. Seguros Múltiples de P.R. v. Lugo*, 136 DPR 203, 208 (1994).
[32] *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

foro apelativo intermedio para no intervenir a destiempo con el trámite pautado por el foro de instancia.[33]

III

En el recurso de marras, la parte peticionaria esencialmente plantea su inconformidad con la denegatoria del foro primario de desestimar la *Demanda* a su favor. A su juicio, el pliego no expone una reclamación que justifique la concesión de un remedio.

Según expusimos previamente, un tribunal apelativo no intervendrá con el ejercicio de la discreción de los Tribunales de Primera Instancia, salvo que se demuestre que dicho tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[34] Por otro lado, el *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior.[35] A esos efectos, la naturaleza discrecional del recurso de *certiorari* queda enmarcada dentro de la normativa que le concede deferencia de las actuaciones de los Tribunales de Primera Instancia, de cuyas determinaciones se presume su corrección. Por ello, la expedición del referido auto tiene que anclarse en una de las razones de peso que establece la Regla 52.1 de Procedimiento Civil,[36] o la Regla 40 del Reglamento del Tribunal de Apelaciones.[37]

Tras evaluar minuciosamente el recurso presentado por la parte peticionaria, y luego de una revisión de la totalidad del expediente ante nos, es nuestra apreciación que no se configuran ninguna de las instancias que justificaría la expedición del auto de *certiorari* al amparo de la Regla 52.1 de Procedimiento Civil,[38] o la

---

[33] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96 (2008).
[34] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).
[35] *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009).
[36] 32 LPRA Ap. V, R. 52.1.
[37] *In re Aprob. Enmdas. Reglamento TA*, supra, págs. 59-60.
[38] 32 LPRA Ap. V, R. 52.1.

Regla 40 del Reglamento del Tribunal de Apelaciones.[39] El señalamiento de error y los fundamentos aducidos en la petición presentada no logran activar nuestra función discrecional en el caso de autos. Por tanto, entendemos que esta no es la etapa del procedimiento más propicia para nuestra consideración, y, tampoco, estamos ante una determinación que configure abuso de discreción, prejuicio, parcialidad o error craso y manifiesto que amerite nuestra intervención revisora. El dictamen recurrido no es patentemente erróneo, y encuentra cómodo resguardo en la sana discreción de la primera instancia judicial. Por todo lo antes mencionado, no atisbamos razón para intervenir con la determinación recurrida.

Advertimos, que lo aquí resuelto no tiene efecto de juzgar o considerar en los méritos ninguna de las controversias de derecho planteadas por las partes, de modo que estas podrían ser planteadas nuevamente en una etapa posterior. Es decir, la denegatoria de esta Curia a expedir un recurso de *certiorari* no implica que el dictamen revisado esté libre de errores o que constituya una adjudicación en los méritos.[40] Esto es así, ya que, como es sabido, una resolución de denegatoria de un auto de *certiorari* no implica posición alguna de este Tribunal respecto a los méritos de la causa sobre la cual trata dicho recurso.[41] La resolución denegatoria simplemente es indicio de la facultad discrecional del tribunal revisor de negarse a revisar en determinado momento una decisión emitida por el foro primario.[42]

IV

Por los fundamentos que anteceden, se *deniega* la expedición del auto de *Certiorari*.

---

[39] *In re Aprob. Enmdas. Reglamento TA*, supra, págs. 59-60.
[40] *Cacho Pérez v. Hatton Gotay*, 195 DPR 1, 12 (2016).
[41] *SLG v. Pauneto Rivera*, 130 DPR 749, 755 (1992).
[42] *SLG v. Pauneto Rivera*, supra, a la pág. 756.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones